IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 26-cv-01868-PAB

MERCEDES TOJIN-LUX,

      Petitioner,

v.

TODD LYONS, Acting Director of Immigration & Customs Enforcement,
GEORGE VALDEZ, Acting Field Office Director of Enforcement and Removal
Operations, Denver Field Office, Immigration and Customs Enforcement,
MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security,
U.S. DEPARTMENT OF HOMELAND SECURITY,
TODD BLANCHE, Acting U.S. Attorney General,
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, and
JUAN BALTAZAR, Warden of the Aurora Detention Facility,

      Respondents.

---

**ORDER**

---

This matter comes before the Court on petitioner Mercedes Tojin-Lux's Amended

Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 7].

Respondents filed a response.  Docket No. 13.  Petitioner filed a reply.  Docket No. 14.

## I.    BACKGROUND[1]

Petitioner is a Salvadoran national.  Docket No. 7 at 6.  On January 22, 2001,

U.S. Customs and Border Protection ("CBP") apprehended petitioner shortly after he

entered the United States without inspection.  Docket No. 13-1 at 2, ¶ 5.  That same

day, the Immigration and Naturalization Service charged petitioner with being

---

[1] The following facts are undisputed unless otherwise noted.

inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) and initiated removal proceedings under 8 U.S.C. § 1229(a). *Id.*, ¶ 7. On March 23, 2001, an immigration judge ordered petitioner removed to Guatemala. *Id.* at 3, ¶ 9.

In 2014, Immigration and Customs Enforcement ("ICE") arrested and detained petitioner and reinstated petitioner's removal order after he re-entered the United States. Docket No. 7 at 6; Docket No. 13-1 at 3, ¶ 12.[2] Petitioner claimed fear of persecution if returned to Guatemala. Docket No. 13-1 at 3, ¶ 13. U.S. Citizenship and Immigration Services ("USCIS") conducted a reasonable fear interview and issued a negative fear determination. *Id.*, ¶ 14. An immigration judge vacated USCIS' determination and placed petitioner in withholding-only proceedings. *Id.* On November 21, 2014, petitioner filed a Form I-589, Application for Asylum and for Withholding of Removal. *Id.*, ¶ 15. On August 4, 2015, petitioner granted petitioner's application for withholding of removal. *Id.*, ¶ 16. On August 15, 2015, petitioner was released on an order of supervision. Docket No. 7 at 6; Docket No. 13-1 at 3, ¶ 17.

On or around February 26, 2026, petitioner was apprehended by ICE. Docket No. 7 at 6; Docket No.13-1 at 4, ¶ 18. ICE approached petitioner about the idea of being removed to Mexico, and petitioner declined to agree to removal. Docket No. 13-1 at 4, ¶ 22. On March 6, 2026, ICE referred petitioner to USCIS to conduct a third-country screening interview with petitioner. *Id.*, ¶ 23. On March 11, 2026, USCIS

---

[2] The parties disagree on the exact date in 2014 that petitioner was apprehended by ICE. *Compare* Docket No. 7 at 6 ("Mr. Tojin-Lux was apprehended and placed in proceedings in August of 2014.") *with* Docket No. 13-1 at 3, ¶ 12 ("On March 5, 2014, ICE arrested and detained Petitioner and reinstated the order of removal . . . ."). However, the parties agree that petitioner was released on August 5, 2015 after being detained in 2014. *See* Docket No. 7 at 6; Docket No. 13-1 at 3, ¶ 17.

determined that petitioner did not establish that it was more likely than not that he would be persecuted or tortured in Mexico. *Id.* On April 11, 2026, ICE served petitioner with a Form I-589, a Form I-229(a), and a Warning for Failure to Depart, notifying petitioner that he was subject to a final order of removal and the consequences of taking any action to prevent or hamper his removal. *Id.*, ¶ 24. On April 30, 2026, ICE served petitioner with a Notice of Removal to Mexico, which petitioner refused to sign. *Id.* at 5, ¶ 26. On May 1, 2026, ICE served petitioner with a Notice of Failure to Comply pursuant to 8 C.F.R. § 241.4(g). *Id.*, ¶ 27. Petitioner is detained at the Denver Contract Detention Facility in Aurora, Colorado. Docket No. 7 at 2, ¶ 1.

On May 5, 2026, petitioner filed an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. *See generally id.* Petitioner brings a claim for violation of his Fifth Amendment right to due process (Count One); violation of 8 U.S.C. § 1231(a) (Count Two); violation of 8 C.F.R. § 241.4 (Count Three); and violation of 8 U.S.C. § 1231(b)(3)(A) (Count Four). *See id.* at 20-21. Among other forms of relief, petitioner requests that the Court order his immediate release on an order of supervision that reflects the terms of his previous release. *See id.* at 21-22.

## II.    ANALYSIS

### A. *Zadvydas*

Petitioner argues that respondents have violated his due process rights under the Fifth Amendment pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See* Docket 7 at 10-14. In *Zadvydas*, the Supreme Court held that a noncitizen ordered removed and detained under § 1231(a)(6) cannot be indefinitely detained without violating the Fifth Amendment of the United States Constitution. *See Zadvydas*, 533 U.S. at 701.

3

*Zadvydas* held that a six-month period of post-removal detention is presumptively reasonable, but, "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* This standard does not require petitioner to "show the absence of *any* prospect of removal – no matter how unlikely or unforeseeable." *Id.* at 702. Rather, he simply must show that removal is not significantly likely in the reasonably foreseeable future. *Id.* at 701.

Respondents do not contest that petitioner's detention has exceeded the presumptively reasonable six-month period. *See* Docket No. 13 at 6-7. Including petitioner's detention from 2014 to 2015 and his detention beginning on approximately February 26, 2026, petitioner has been detained for longer than six months. *See Pena-Gil v. Lyons*, No. 25-cv-03268-PAB-NRN, 2025 WL 3268333, at *2 (D. Colo. Nov. 24, 2025) (despite petitioner's "periods of detention being served nonconsecutively, petitioner has nonetheless been detained longer than the six-month presumptively reasonable period") (collecting cases).

The Court turns to whether petitioner has met his burden under *Zadvydas*. Respondents argue that petitioner has not met his burden because petitioner is "on the manifest for removal, and DHS has received diplomatic assurances from the Democratic Republic of Congo that Petitioner will not be persecuted or tortured," citing the declaration of ICE Officer Irma Quinones. Docket No. 13 at 8 (citing Docket No. 13-1 at 5, ¶ 28). Officer Quinones states that petitioner is scheduled to be removed to the DRC on May 27, 2026. Docket No. 13-1 at 5, ¶ 28. Petitioner contends, however,

4

based on "the most recent information obtained by Petitioner, Petitioner is not scheduled for removal to the Democratic Republic of Congo (DRC)."  Docket No. 14 at 2 (emphasis omitted).  In support, petitioner cites email correspondence between petitioner's counsel and ICE Officer Michael Ketels, dated May 13, 2026.  *See* Docket No. 14-1 at 2-3.  In response to counsel's request for information on petitioner's alleged, pending removal to the DRC, Officer Ketels stated the following:

> I am unaware of any coordination with removal to the Democratic Republic of the Congo.  If he is nominated and approved to another third county, he will have the opportunity to claim fear of removal to that country.  As his counsel, you will be included in the USCIS fear interview if this happens.  We confirmed with our chief counsel that we can periodically check with your client regarding third country removals for compliance with his removal order.

*See id.* at 2.  Prior to this email, petitioner's counsel had been communicating with Officer Ketels regarding attempts to deport petitioner to Mexico.  *See id.* at 4.  Included on the correspondence is Christopher C. Harms, who is the Supervisory Detention and Deportation Officer at the Denver Contract Facility.  *See id.* at 1-7.  In light of Officer Ketels's representations, the Court finds that petitioner has carried his burden to show that his removal is not significantly likely in reasonably foreseeable future.  In addition to it being disputed whether petitioner is scheduled for removal to the DRC, petitioner's removal order has been final since at least 2014.  *See* Docket No. 13-1 at 3, ¶ 12.  For 12 years, respondents have been unable to effect petitioner's removal.  "[A]s the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."  *Zadvydas*, 533 U.S. at 701.  Petitioner cannot be removed to Guatemala because the immigration judge granted petitioner's withholding of removal.  Docket No. 13-1 at 3, ¶ 16.  Despite USCIS' finding on March 6, 2026 that petitioner had not established credible fear regarding deportation to

Mexico, respondents have not effected petitioner's removal to Mexico.  *See* Docket No. 13-1 at 4, ¶ 23.[3]

Petitioner having the ability to seek protection from removal to the DRC under 8 U.S.C. § 1231(b)(3) also demonstrates that his removal is not likely in the reasonably foreseeable future.  As Officer Ketels acknowledges, if petitioner is "nominated and approved to another third county, he will have the opportunity to claim fear of removal to that country."  *See* Docket No. 14-1 at 2.  However, there is no evidence that respondents have provided petitioner with a credible fear interview or have scheduled an interview regarding removal to the DRC.  *See generally* Docket No. 13-1.  Thus, petitioner being entitled to "notice and an opportunity to seek protection from removal" pursuant to 8 U.S.C. § 1231(b)(3) further supports that his deportation is not likely in the reasonably foreseeable future.  *See Jimenez Chacon v. Lyons*, 811 F. Supp. 3d 1299, 1310-11 (D.N.M. 2025); *Ndandu v. Noem*, 819 F. Supp 1155, 1162 (S.D. Cal 2026) ("While such proceedings [under 8 U.S.C. § 1231(b)(3)] may only delay removal, the fact that Petitioner likely will have the opportunity to seek further relief from the Immigration Court, and then potentially file appeals from any adverse rulings, further demonstrates that removal is not likely in the reasonably foreseeable future.") (internal quotation, alterations, and citation omitted).  Accordingly, the Court finds that petitioner has satisfied his burden under *Zadvydas.*

Turning to respondents' burden under *Zadvydas*, respondents rely on Officer Quinones's declaration stating that petitioner will be deported to the DRC and that the

---

[3] Officer Quinones states that petitioner refused to sign the Notice of Removal to Mexico.  Docket No. 13-1 at 4-5, ¶¶ 25-26.  Respondents do not explain why petitioner's refusal to sign the Notice means that they cannot effect his removal.

DRC has provided "diplomatic assurances" that petitioner will not be persecuted or tortured.  *See* Docket No. 13 at 7-8.  However, as discussed above, petitioner disputes that assertion.  Furthermore, as Officer Ketels acknowledges, petitioner is entitled to claim fear of removal to the DRC, *see* Docket No. 14-1 at 2, and there is no evidence that plaintiff has been given that opportunity or that a credible fear interview is scheduled.  Accordingly, the Court finds that respondents have failed to provide evidence that rebuts petitioner's showing that there is no significant likelihood of removal in the reasonably foreseeable future.

The Court finds that respondents have detained petitioner in violation of the Fifth Amendment and 8 U.S.C § 1231(a) and will order that petitioner be released from custody pursuant to 28 U.S.C. § 2241(c)(3).

**B.  <u>Whether Petitioner's Re-detention Violates 8 C.F.R. § 241.4(l) and the Fifth Amendment</u>**

Petitioner argues that respondents violated 8 C.F.R. § 241.4(l) and the due process clause when they re-detained petitioner and revoked petitioner's order of supervision without notice and an opportunity to contest the reasons for the revocation. *See* Docket No. 7 at 14-17.  Respondents contend that they did provide notice and an opportunity to be heard because they issued a Notice of Revocation of Release and conducted a formal interview with petitioner informing him of the reasons for the revocation.  *See* Docket No. 13 at 8-9.  Respondents contend that petitioner provided a written statement in response to the reasons for revocation.  *See id.* at 9.

Pursuant to § 241.4(l),[4] a noncitizen's order of supervision may be revoked upon violation of the conditions of release.  *See* 8 C.F.R. § 241.4(l)(1).  Alternatively, a noncitizen's order of supervision may be revoked upon determination of the Executive Associate Commissioner:

> The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section.  A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner.  Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
> (i) The purposes of release have been served;
>
> (ii) The alien violates any condition of release;
>
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
>
> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

*Id.*, § 241.4(l)(2).  "Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole.  The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."  *Id.*, § 241.4(l)(1); *Banega v. Warden of Soft Side S. Facility*, 2026 WL 234042, at *3 (M.D. Fla. Jan. 29, 2026) ("Courts routinely interpret section 241.4(l) as requiring an informal interview upon the revocation of release regardless of the reason for the revocation – meaning that the notice and interview requirements stated in § 241.4([l])(1) also apply to

---

[4] Respondents agree that the revocation of petitioner's release is governed by § 241.4(l).  *See* Docket No. 13-1 at 4, ¶ 18.

revocation under § 241.4([l])(2)") (internal quotation, alteration, and citation omitted) (collecting cases).

There is no indication that the Executive Associate Commissioner or district director revoked petitioner's order of supervision. Rather, Officer Quinones merely states that "ICE also issued a Notice of Revocation of Release pursuant to 8 C.F.R. § 241.4(l), which revoked Petitioner's release on supervision." Docket No. 13-1 at 4, ¶ 18. Respondents do not provide the Notice of Revocation of Release or otherwise provide evidence that an appropriate official revoked petitioner's order of supervision. *See Kumar v. Mullin*, No. 26-cv-1264-WJM, 2026 WL 1139601, at *3 (D. Colo. Apr. 24, 2026) (finding that respondents violated § 241.4(l) where there was "no indication here that the decision to revoke his supervised release was made by the Executive Associate Commissioner or, if appropriate, a district director"); *Izquierdo Navarro v. Bondi*, No. 25-cv-04210-NYW, 2026 WL 468582, at *2 (D. Colo. Feb. 18, 2026) (finding that the declaration of an ICE officer that merely stated "ICE" revoked petitioner's order of supervision was insufficient to show that "the revocation decision was made by a properly authorized official").

There is no evidence that the Notice stated the reasons for revocation and, again, respondents do not provide the Notice. *See Kumar*, 2026 WL 1139601, at *3 (finding a violation of § 241.4(l) where "[t]he Government provides no indication that the Notice set forth 'the reasons for revocation of his . . . release or parole'") (quoting 8 C.F.R. § 241.4(l)(1)). Petitioner denied having received the Notice. *See* Docket No. 14 at 3. Officer Quinones also fails to identify the reasons for revocation. *See* Docket No. 13-1 at 4, ¶ 18. In their response to the petition, respondents argue that, "[u]nder the

applicable regulations and statute, ICE may, in the exercise of its discretion, revoke release where the purposes of release have been served; it is appropriate to enforce a removal order; or there is a change in circumstances."  Docket No. 13 at 9-10 (citing 8 C.F.R. § 241.4(l)(2)) (footnote omitted).  Without citing any evidence or specifying which subsection of § 241.4(l) supports the revocation of petitioner's release, respondents contend that "[t]hose were the bases for Petitioner's revocation for release and detention here."  *See id.* at 10.  Given that respondents cannot identify the reasons for revocation, the Court finds that respondents failed to provide petitioner with proper notice under § 241.4(l).

Accordingly, the Court finds that respondents violated § 241.4(l) when it revoked petitioner's order of supervision.  "[C]ourts across the country routinely hold that (1) ICE violating its own regulations in detaining an individual is a due process violation, and (2) this violation makes the detention unlawful and the proper remedy is release."  *Izquierdo Navarro*, 2026 WL 468582, at *3.  Thus, the Court rejects respondents' argument that release is not the proper remedy.  *See* Docket No. 13 at 10-11.  Moreover, the Court has already found that petitioner is entitled to release pursuant to *Zadvydas.  See Salazar-Martinez v. Lyons*, 2025 WL 3204807, at *2 (D.N.M. Nov. 17, 2025) ("The remedy for a *Zadvydas* claim is generally release of the petitioner under conditions of supervision.").  The Court also rejects respondents' argument that petitioner has failed to show prejudice from the violation of his due process rights.  *See Izquierdo Navarro,* 2026 WL 468582, at *3 n.2 ("failure to receive mandatory process is clearly prejudicial . . ., particularly when accompanied by physical restraint") (internal citation omitted) (quoting *Sanchez v. Bondi*, No. 25-cv-02287-CNS, 2025 WL 3484756, at *2 n.* (D.

10

Colo. Dec. 4, 2025)); *Kumar*, 2026 WL 1139601, at *4 (petitioner "has surely been prejudiced by Respondents' two-month long failure to adhere to their own procedures, which has in turn deprived [petitioner] of the opportunity to challenge the reasons for his detention – to say nothing of the deprivation of his liberty during that time period") (internal quotation and citation omitted).

Where "Respondents violated Petitioner's procedural due process rights" by "ignor[ing] its own regulations, depriving [petitioner] of adequate notice and the opportunity to respond knowingly to any reasons for the revocation," courts have determined the "only appropriate remedy is immediate release pursuant to the conditions of Petitioner's previous [order of supervision]." *See Farfan v. Jones*, 2026 WL 1329531, at *6 (W.D. Okla. May 13, 2026) (collecting cases); *see, e.g.*, *Kumar*, 2026 WL 1139601, at *5 (finding that respondents violated § 241.4(l) and ordering petitioner's release "subject only to the conditions of his pre-existing OSUP" and that "[n]o additional conditions of release shall be imposed on [petitioner] by Respondents"); *Izquierdo Navarro*, 2026 WL 468582, at *4 (same); *Sanchez*, 2025 WL 3484756, at *3 (same).[5]

### III.   CONCLUSION

Therefore, it is

---

[5] Because the Court will grant petitioner relief on the basis of Counts One, Two, and Three, the Court will not reach Count Four. *See Loa Caballero v. Baltazar*, No. 25-cv-03120-NYW, 2025 WL 2977650, at *8 (D. Colo. Oct. 22, 2025) ("Since the Court's ruling on the INA claim will afford Petitioner the entirety of the relief he seeks, the Court need not address Petitioner's remaining arguments.").

**ORDERED** that petitioner Mercedes Tojin-Lux's Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 7] is **GRANTED**.  It is further

**ORDERED** that respondents shall release Mercedes Tojin-Lux from custody within **72 hours,** subject to the same conditions of his prior order of supervision.  It is further

**ORDERED** that the parties shall file a status report within **48 hours** of petitioner's release.

DATED May 26, 2026.

BY THE COURT:

s/ Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge